UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

THE CITY OF NEW YORK,

                                        Plaintiff,

      -against-                                 CIVIL ACTION NO.

ARM OR ALLY, LLC, RAINIER ARMS, LLC, SALVO
TECHNOLOGIES, INC. d/b/a "80P BUILDER," ROCK    **DECLARATION OF**
SLIDE USA, LLC, and INDIE GUNS, LLC,                **INSPECTOR COURTNEY**
                                                   Defendants.       **NILAN**

------------------------------------------------------------------x

I, Courtney Nilan, pursuant to 28 U.S.C. § 1746, hereby declare and state as follows:

1.     I am an Inspector in the New York City Police Department ("NYPD"). I have held the rank of Inspector since November 2021. Between November 2018 and November 2021, I held the rank of Deputy Inspector. I am assigned to the Criminal Intelligence Section of the NYPD's Intelligence Bureau, where I serve as Commanding Officer of the NYPD's Field Intelligence Program. I have been employed by the NYPD for eighteen years.

2.     I base this Declaration on my personal knowledge, conversations with members of the NYPD's Intelligence Bureau, and a review of NYPD records kept in the ordinary course of business. I submit this Declaration in support of Plaintiff's Motion for a Preliminary Injunction.

3.     As Commanding Officer of the NYPD's Field Intelligence Program, I am responsible for the command of approximately ninety-five different city-wide field intelligence teams staffed by between 350 and 375 uniformed members of the NYPD. One such team under

my command is the Major Case Field Intelligence Team (the "MCFI Team" or the "Team"). The Team is dedicated entirely to the investigation, recovery and/or seizure of privately made firearms, known colloquially as "ghost guns," and components of such firearms through, among other things, the enforcement of New York City's prohibition on the possession, sale, transfer, or offering for sale of unfinished frames or receivers by or to a person in New York City.

4. Unfinished frames or receivers can be purchased online or created through the use of 3D printers. They can be easily finished and assembled into fully functional firearms using additional components bought online or 3D printed, thereby putting unserialized, untraceable, and extremely dangerous ghost guns in the hands of people who have not been subjected to federally-mandated background checks. As fully functional firearms, ghost guns are as lethal as any commercially manufactured firearm, and are being increasingly recovered in connection with the full spectrum of gun-related crimes in New York City.

5. The lethality of ghost guns and the escalating frequency of their recovery in New York City, when combined with their ability to be privately manufactured using components purchased online and to evade existing law and regulation, makes ghost guns particularly dangerous. That growing danger led to the creation of the MCFI Team in February 2020, when the City's prohibition on the possession or sale of unfinished frames or receivers took effect.

6. The MCFI Team's mission is to stop the flow of ghost guns before they hit New York City's streets, and to recover ghost guns already illegally possessed in the city. The MCFI Team is comprised of two full-time Field Intelligence Sergeants and five full-time detectives, designated as Field Intelligence Officers, who spend all of their time conducting short- and long-term ghost guns investigations across the city. In addition, three civilian analysts spend significant portions of their time supporting the work of the Team. I am also assisted in my

command of the Team by a Field Intelligence Captain who dedicates approximately twenty percent of his time to the Team.

7. Although I have command of approximately ninety-five field intelligence teams citywide, I estimate that I currently spend at least fifty percent of my time working with the MCFI Team on advancing ghost guns-related policing efforts. This is because the short- and long-term investigations conducted by the MCFI Team are incredibly complex and intricate, and require extensive surveillance, data collection, and background information gathering. The Team also serves as a resource to other NYPD divisions on ghost guns and ghost gun-involved investigations, and frequently receives requests for information and consultation.

8. The MCFI Team's complex investigations result in a significant number of all ghost gun seizures and related arrests city-wide. Additionally, the Team works with all of the City's five District Attorneys, New York state law enforcement, other state and local law enforcement in nearby jurisdictions, and federal agencies such as the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

9. Because the MCFI Team has developed an unmatched expertise on ghost guns, they have been asked to hold, and have held, trainings on strategies for investigating ghost guns for two NYC-based District Attorney's Offices. Four of the Team's Intelligence Field Officers have also been certified as internal NYPD trainers to provide ghost gun-related trainings to other NYPD teams, including NYPD Public Safety Teams and the newly created Neighborhood Safety Teams specifically tasked with focusing on street gun recoveries. The Team has also been called upon to provide ghost gun-related instruction and assistance to other nearby police departments including in Rockland County, Westchester County, Orange County, and on Long Island.

10. As part of its efforts to investigate and control the spread of ghost guns, including by identifying ghost gun-related trends and hot spots in New York City, the Team seeks to track ghost gun recoveries throughout the city. The Team collects available information about recovered ghost guns concerning, for example, the ghost gun's type and the nature of the arrest through which it was recovered.

11. As the data shows, the MCFI Team has seen illegal ghost gun seizures increase exponentially in the city over the past four years. In 2018, the NYPD recovered seventeen ghost guns. The following year, that number more than doubled to forty-eight. In 2020, the NYPD recovered 150 ghost guns, triple that of the prior year. In 2021, 263 ghost guns were recovered—a fifteen times increase in annual ghost gun recoveries in just three years. Already, as of June 14, 2022, the department has recovered 175 ghost guns this year. This represents a more than 200% increase compared to the approximately fifty-two ghost guns recovered as of this time last year. This puts the NYPD on pace to exceed even 2021's record high ghost gun recovery numbers. For example, in March 2022, the NYPD recovered fifty-five ghost guns, compared to ten in March 2021, a 450% increase. Similarly, in April 2022, the NYPD recovered thirty-three ghost guns, an increase of 371% compared to the seven recovered in April 2021.

12. The MCFI Team has also started to track the number of ghost gun lower receivers or frames recovered by the NYPD. The MCFI Team has seen a growing number of these recoveries year-over-year.

13. Ghost guns now represent approximately 9% of all guns recovered in New York City, not including any ghost guns voluntarily surrendered to law enforcement through an

amnesty program or otherwise—a troubling increase in their proportion in just four years—and thus have become a critical safety concern for the NYPD and New York City as a whole.

14. Ghost guns are increasingly being used in major crimes and recovered in the possession of those who otherwise could not legally obtain a firearm, such as convicted felons and minors. In 2021, ghost guns were recovered in connection with arrests concerning at least four robberies or attempted robberies, five "shots fired" incidents, six shootings, and twelve domestic violence incidents. A ghost gun, possessed by a 17-year-old was seized at a high school, and ghost guns were recovered on New York City public transportation on at least three separate occasions.

15. In 2022, the torrid pace of ghost gun recoveries relating to major crimes has continued. For example, ghost guns were involved in two tragic homicides this year. In April 2022, a 16-year-old girl was murdered and two other teens were injured in the Bronx, allegedly shot by a 17-year-old using a ghost gun. The teenage victims were all bystanders walking home from school when the shooter opened fire. In May 2022, a man with a lengthy criminal record, allegedly used a ghost gun to kill a man on a Bronx street and injure two bystanders.

16. Ghost guns have been recovered relating to other serious crimes as well in 2022. As of June 14, 2022, ghost guns have been recovered in connection with arrests concerning at least one non-fatal shooting, four robberies, six domestic violence incidents, and seven "shots fired" incidents. NYPD officers have seized ghost guns at a school, on public transportation, and in connection with a call for an emotionally disturbed person.

17. I am familiar with the allegations in the City's lawsuit against a number of online retailers of ghost gun components. In my experience, as a result of the indiscriminate online sale of ghost gun components in violation of state and City law described in the complaint,

dangerous, untraceable ghost guns continue to flood the streets of New York City. Because of these illicit sales and their inevitable criminal consequences, the NYPD must dedicate significant police time and resources to investigate, track, and recover illegal ghost guns. If not for the proliferation of ghost guns by sellers such as Defendants, these resources could and would be directed elsewhere, towards other pressing NYPD crime-reduction and policing efforts in New York City.

I declare, under penalty of perjury under the laws of the United States of America, that the above is true and correct to the best of my knowledge.

Executed this 24th day of June, 2022

_____
Courtney Nilan