UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

THE CITY OF NEW YORK,

                                           Plaintiff,       Civ. No. 22-5525

           -against-

ARM OR ALLY LLC, RAINIER ARMS, LLC, SALVO
TECHNOLOGIES, INC. d/b/a "80P BUILDER," ROCK
SLIDE USA, LLC, and INDIE GUNS LLC,

                                      Defendants.
------------------------------------------------------------------------x

## MEMORANDUM OF LAW OF PLAINTIFF THE CITY OF NEW YORK IN SUPPORT OF A PRELIMINARY INJUNCTION

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
 City of New York
*Attorney for Plaintiff The City of New York*
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ................................................................................................................................. 2

    A.   Ghost Guns Are a Severe and Growing Public Safety Problem in the City ........................................................................... 4

    B.   Defendants Illegally Sell New Yorkers Ghost Guns and Ghost Gun Components Easily Assembled Into Ghost Guns ............................................................................................. 7

    C.   Defendants' Illegal, Unserialized Frames Are Easily Assembled Into Deadly Weapons .......................................... 11

LEGAL STANDARD—PRELIMINARY INJUNCTION ............................................. 12

ARGUMENT ...................................................................................................................... 14

POINT I

    THE COURT SHOULD ENJOIN DEFENDANTS' SALES AND DELIVERIES OF GHOST GUNS, FRAMES AND RECEIVERS, AND GHOST GUN COMPONENTS INTO NEW YORK CITY ................................................................ 14

    A.   Although Not Required To, The City Has Shown Irreparable Injury ........................................................................ 15

    B.   The City Is Likely To Succeed On The Merits Of Its Claim That Defendants Create A Statutory Public Nuisance Under GBL § 898-b .................................................. 16

    C.   There Is A Substantial Likelihood That The City Will Succeed On The Merits Of Its Claim That Defendants Create A Common Law Public Nuisance .............................. 22

    D.   The Defendants Are Likely To Continue Their Violations ................................................................................. 24

    E.   The Public Interest and the Equities Tip Sharply in the City's Favor .............................................................................. 25

CONCLUSION ................................................................................................................... 26

**Statutes**                                                                 **Pages**

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*532 Madison Ave. Gourmet Foods v. Finlandia Ctr.*,
   96 N.Y.2d 280 (2001) .................................................................................23

*California v. Am. Stores Co.*,
   495 U.S. 271 (1990) ...................................................................................13

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
   598 F.3d 30 (2d Cir. 2010) .....................................................................n.17

*City of Gary v. Smith & Wesson*,
   801 N.E.2d 1222 (Ind. 2003) ....................................................................21

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*,
   2008 U.S. Dist. LEXIS 87236
   (E.D.N.Y. Sep. 17, 2008),
   *rev'd on other grounds, City of N.Y. v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) .....................................................................23

*City of N.Y. v. Artisan Vapor Franchise LLC*,
   2020 U.S. Dist. LEXIS 205315 (E.D.N.Y. Nov. 2, 2020).........................23

*City of N.Y. v. Beam Bike Corp.*,
   2022 N.Y. App. Div. Lexis 3684 (1st Dep't June 9, 2022) ...........12, n.16

*City of N.Y. v. Golden Feather Smoke Shop, Inc.*,
   597 F.3d 115 (2d Cir. 2010) ...............................12, 14, n.16, n.17

*City of N.Y. v. Milhelm Attea & Bros., Inc.*,
   550 F. Supp. 2d 332 (E.D.N.Y. 2008) ......................................................24

*City of New York v. Beretta U.S.A. Corp.*,
   315 F. Supp. 2d 256 (E.D.N.Y. 2004) .....................................................23

*6v. Smith*,
   849 F.2d 80 (2d Cir. 1988) ........................................................................13

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938)......................................................................................16

*F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*.,
   597 F.2d 814 (2d Cir. 1979) ...................................................................n.17

*Hicksville Water Dist. v. Philips Elec. North America Corp.*,
  2018 U.S. Dist. LEXIS 53342 (E.D.N.Y. Mar. 29, 2018)......................................................23

*Hine v. Aird-Don Co.*,
  232 A.D. 359 (3d Dep't 1931)..................................................................................................24

*Lauf v. E.G. Shinner & Co.*,
  303 U.S. 323 (1938).............................................................................................................n.16

*Lichtenberg v. Besicorp Grp. Inc.*,
  43 F. Supp. 2d 376 (S.D.N.Y. 1999) .......................................................................................13

*McNulty v. Ludwig & Co.*,
  153 A.D. 206 (2d Dep't 1912)..................................................................................................24

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013) .......................................................................................................22

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010) .....................................................................................................n.3

*NAACP v. AcuSport, Inc.*,
  271 F. Supp. 2d 435 (E.D.N.Y. 2003) .....................................................................................24

*New York Trap Rock Corp. v. Town of Clarktown*,
  299 N.Y. 77 (1949)...................................................................................................................23

*People v Apple Health & Sports Clubs*,
  174 A.D.2d 438 (1st Dep't 1991), *aff'd* 80 N.Y.2d 803 (1992) .............................................12

*People v. Rubenfeld*,
  254 N.Y. 245 (1930)...............................................................................................................n.18

*Resolution Tr. Corp. v. Elman*,
  949 F.2d 624 (2d Cir. 1991) .....................................................................................................12

*Robar v. Vill. of Potsdam Bd. of Trs.*,
  490 F. Supp. 3d 546 (N.D.N.Y. 2020)...................................................................................n.1

*SEC v. Commonwealth Chem. Secs., Inc.*,
  574 F.2d 90 (2d Cir. 1978) ....................................................................................................n.19

*SEC v. Manor Nursing Centers, Inc.*,
  458 F.2d 1082, 1100 (2d Cir. 1972.........................................................................................24

*SEC v. Mgmt. Dynamics, Inc.*,
  515 F.2d 801, 807 (2d Cir. 1975) ...........................................................................................24

*SyncSort Inc. v. Innovative Routines, Int', Inc.,*
   2011 U.S. Dist. LEXIS 92321 (D.N.J. Aug. 18, 2011) ...........................................n.14

*Town of Mount Pleasant v. Van Tassell,*
   7 Misc.2d 643645 (Sup. Ct. Westchester Cnty. 1957) ............................................18

*U.S. v. 16,179 Molso Italian .22 Caliber Winler Derringer Starter Guns,*
   443 F.2d 463 (2d Cir.1971) ..................................................................................18

*U.S. v. Mullins,*
   446 F.3d 750 (8th Cir. 2006) ...............................................................................19

*U.S. v. Rivera,*
   415 F.3d 284 (2d Cir. 2005) .................................................................................19

*Uggla v. Brokaw,*
   117 A.D. 586 (1st Dep't 1907) ............................................................................23

*United States v. Blue Ribbon Smoked Fish, Inc.,*
   179 F. Supp. 2d 30 (E.D.N.Y. 2001) ..............................................................14, 24

*United States v. Ciampitti,*
   583 F. Supp. 483 (D.N.J. 1984) ...........................................................................16

*United States v. Gary Brown,*
   Criminal Docket No. 20-352 (E.D.N.Y.)
   (ECF No. 26, Sentencing Memorandum, filed Oct. 14, 2021) .......................n.1, n.9

*United States v. Int'l Minerals & Chem. Corp.,*
   402 U.S. 558 (1971)............................................................................................20

*United States v. Morales,*
   280 F. Supp. 2d 262 (S.D.N.Y. 2003) ..................................................................19

*United States v. Weintraub,*
   273 F.3d 139 (2d Cir. 2001) .................................................................................20

*United States v. Wick,*
   697 F. App'x 507 (9th Cir. 2017) .........................................................................19

## **Statutes**

15 U.S.C. § 7903(4)......................................................................................18, 19

18 U.S.C. § 921(a)(3) ...........................................................................17, 18, 19

Fed. R. Civ. P. 65...............................................................................................25

Fed. R. Evid. § 201 ..............................................................................................2

NYC Admin. Code § 10-314 ...................................................................passim

N.Y. Gen. Bus. L. § 898 ........................................................................passim

N.Y. Penal Law § 265 ............................................................................passim

**Other Authorities**

"*Definition of 'Frame or Receiver' and Identification of Firearms*,"
     Fed. Reg. Vol. 87. No. 80, 24652, 24656 (April 26, 2022) .......................................6

N.Y. Laws 2021, ch 237, § 1 ...........................................................................15

13 Moore's Federal Practice - Civil § 65.07 (2022)...........................................13

Plaintiff the City of New York (the "City"), respectfully submits this memorandum of law in support of its motion for a preliminary injunction against defendants Arm or Ally, LLC ("Arm or Ally"), Rainier Arms, LLC ("Rainier Arms"), Salvo Technologies, Inc. d/b/a 80p Builder ("80P Builder"), Rock Slide USA, LLC ("Rockslide USA"), and Indie Guns, LLC ("Indie Guns") (collectively, "Defendants").

## PRELIMINARY STATEMENT

In direct defiance of New York City and New York State law, Defendants sell over the internet and deliver into New York City unlawful, untraceable "ghost guns," and components easily assembled into ghost guns, creating a market for illegal firearms, and putting firearms into the hands of criminals, domestic abusers and minors.

Ghost guns are firearms, sold in parts or in kits, without serial numbers, and are so-named for their most sought-after feature: invisibility to law enforcement. *Declaration of Assistant Corporation Counsel Eric Proshansky ("Proshansky Decl.")* ¶ 2. The key structural component of a ghost gun is the frame or receiver. *Declaration of New York City Police Department Inspector Courtney Nilan ("Nilan Decl."),* ¶¶ 3-5. Defendants' business model is to sell so-called "80%" or "unfinished" frames to persons who, following widely-available, easy instructions, will "finish" them, by adding the remaining components also sold to them by Defendants or others, and assemble fully operational weapons. *Id.* ¶ 8; *Declaration of Francesca Rosa, Deputy Sheriff in the Office of the New York City Sheriff ("Rosa Decl.")* ¶¶ 9, 17. Ghost gun sellers, like Defendants here, operate on the pretense that their products are not "firearms" under federal law because they are "unfinished" or "80% complete" and hence require neither serial numbers nor background checks when sold. *Proshansky Decl.* ¶ 3. The sale or possession of ghost guns and "unfinished" frames or receivers has been illegal in the City for over two years under New York City

Administrative Code § 10-314 ( effective February 23, 202), and is now also illegal under the New

York Penal Law §§ 265.60-.64 (sale); 265.01(9)-(10) (possession) (effective April 26, 2022).

The predictable result of Defendants' conduct is the arming of criminals and others barred

by federal law from gun possession, followed by an equally predictable increase in the recovery

of untraceable ghost guns at City crime scenes. *Nilan Decl.* ¶¶ 4, 5, 11-16. Over the last several

years, ghost gun buyers have amassed weapons caches for sale to others;[1] ghost guns have been

used in murders;[2] and a ghost gun has been brought to school by a student.[3] The grim escalation

in crimes associated with ghost guns is evidenced by the rapidly escalating number of ghost guns

---

[1] Press Release, *Queens Man Charged With Possessing Arsenal of Illegal "Ghost" Guns*, Queens County District Attorney (Dec. 9, 2021), available at https://perma.cc/7C9D-XJ4L; *see also http://www.brooklynda.org/2022/04/22/bushwick-man-indicted-for-illegal-possession-of-ghost-guns/*; Ben Feuerherd, *NYC man allegedly kept 'arsenal' of 'ghost guns' and ammo in Brooklyn home*, N. Y. Post (Oct. 4, 2021), available at https://perma.cc/X6KF-3DP9; *United States v. Gary Brown*, Criminal Docket No. 20-352 (E.D.N.Y.) (ECF No. 26, Sentencing Memorandum, filed Oct. 14, 2021). This Memorandum cites numerous court papers, press releases and other press documents to support the proposition that ghost guns are used in connection with crime in the City, that ghost guns are used in crimes of violence, and that law enforcement is burdened by crimes committed with ghost guns. It is well-settled that "hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction." *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010). Indeed, excluding hearsay evidence "at the preliminary injunction stage … would be at odds with the summary nature of the remedy and would undermine the ability of courts to provide timely provisional relief" *Id.* The Court may also take judicial notice of these materials, *see* Fed. R. Evid. § 201, including newspaper articles. *Robar v. Vill. of Potsdam Bd. of Trs.*, 490 F. Supp. 3d 546, 564 n. 7 (N.D.N.Y. 2020).

[2] *Nilan Decl.* ¶ 15; Reuven Fenton, Joe Marino and Jorge Fitz-Gibbon, *'Ghost gun'-obsessed Taco Bell staffer returned to work after fatal shooting: DA*, N.Y. Post (May 4, 2022), available at https://perma.cc/Q8SX-AWFW (captured May, 17, 2022); Larry Celona, Tina Moore, Kevin Sheehan and Jorge Fitz-Gibbon, *This is the 'ghost gun' tied to the shooting of a Bronx teenager*, N.Y. Post (April 10, 2022), available at https://perma.cc/2XCX-U3X3 (captured May 6, 2022); *NYPD: 5 Shot, Including Suspect, After Fight Breaks Out As Bars Close In Upper Manhattan*, CBS News New York (Sept. 27, 2021), available at https://perma.cc/3TE3-EEET (captured May 17, 2022); *3 Men Shot As Groups Clash Outside Manhattan Recording Studio*, CBS News New York (November 17, 2021), available at https://perma.cc/SDS5-84LZ (captured May 17, 2022).

[3] *Nilan Decl.* ¶ 14; *Student arrested with gun, $30K cash in backpack at Brooklyn high school*, ABC7 NY Eyewitness News (Dec. 2, 2021), available at https://perma.cc/8RSL-GNRS.

recovered by the New York City Police Department ("NYPD"): 17 in 2018, 48 in 2019, 150 in 2020, and 263 in 2021. *Nilan Decl.* ¶11. NYPD's ghost gun recoveries in 2022 are on pace to exceed the 2021 total, with 175 ghost guns recovered via arrests through June 14, 2022. *Id.* Ghost guns now represent approximately 9% of all guns recovered by the NYPD during arrests. *Id.* ¶13. Notably, these numbers reflect only ghost guns actually recovered by law enforcement; the true number of ghost guns in the City is surely far higher, evidenced by Defendants' deliveries of hundreds of packages into the  State and City, packages likely, given Defendants' business, to contain ghost guns or ghost gun components. *Proshansky Decl.* ¶¶ 9-12; *Id.* Ex. 1.

Defendants' illegal conduct causes a quintessential public nuisance under the New York General Business Law §§ 898-a *et seq.*, which provides a claim for a public nuisance arising specifically out of the conduct of gun industry members whose practices create public harm through unlawful or unreasonable conduct. Defendants' conduct also creates a common law public nuisance because the proliferation of ghost guns in the hands of prohibited possessors injures the health and safety of the millions of people who live in, work in and visit the City, including law enforcement, and threatens continuing injury to that population. The Court should order that Defendants immediately comply with state and local law and cease their sales and deliveries to New York City addresses.

## **FACTS**

The facts pertinent to this motion are set forth in the Declarations and annexed exhibits of Inspector Courtney Nilan, Deputy Sheriff Francesa Rosa, Assistant Corporation Counsel Eric Proshansky, and Sergeant Richard LeBlond, Deputy Sheriff in the Office of the New York City Sheriff ("*LeBlond Decl.*"). The facts are summarized here for the Court's convenience.

### A.      Ghost Guns Are a Severe and Growing Public Safety Problem in the City

Ghost guns are a severe and growing public safety problem in New York City. The NYPD's ghost gun recoveries have exploded over the last five years, from 17 in 2018,  263 in 2021 and 175 in 2022, as of June 14, 2022. Ghost guns now represent approximately 9% of all guns recovered by the NYPD during arrests. *Nilan Decl.* ¶¶11-13.

Ghost guns have taken a dramatic toll on health and well-being in the City, including that of young people. In 2021, the NYPD recovered ghost guns while responding to at least four robberies or attempted robberies, five "shots fired" incidents, six shootings, and twelve domestic violence incidents. Ghost guns were recovered on New York City public transportation on at least three occasions. A 17-year-old was caught attempting to enter his Brooklyn high school with a ghost gun and $30,000 in his backpack. *Nilan Decl.* ¶ 14.[4] In November 2021, a ghost gun was recovered at the scene of a shootout between rival gangs on a Midtown Manhattan street in which three people, including a 19-year-old, were injured.[5]  In September 2021, a man was arrested for attempted murder after allegedly opening fire with a ghost gun in the street outside a Manhattan bar, wounding four people. The man himself was shot and wounded by law enforcement.[6]

Ghost gun assembly lines and arsenals are springing up around the City, creating what the Queens County District Attorney has called a "Polymer pipeline," named for the polymer plastic

---

[4] *Student arrested with gun, $30K cash in backpack at Brooklyn high school*, ABC7 NY Eyewitness News (Dec. 2, 2021), available at  https://perma.cc/8RSL-GNRS.

[5] Press Release, *Queens Man Charged With Possessing Arsenal of Illegal "Ghost" Guns*, Queens County District Attorney (Dec. 9, 2021), available at https://perma.cc/7C9D-XJ4L

[6] *Id.*

used for most ghost gun frames and receivers.[7] Between August and December 2021, five separate ghost gun arsenals were seized by law enforcement in Queens, NY, netting 51 completed ghost guns: 31 handguns, 17 assault weapons, two machine guns, and one semi-automatic shotgun, along with 91 unfinished frames or receivers, 222 high-capacity magazines, four rapid-fire modification devices, and over 30,000 rounds of ammunition; one such arsenal was found in the hands of a 20-year old youth – too young to lawfully possess handguns.[8] Another ghost gun arsenal – with enough parts to assemble 14 ghost guns and a "Ghost Gunner" machine that automates the assembly of ghost guns – was found, along with high-capacity magazines and 850 rounds of ammunition – strewn about the toddler-occupied Brooklyn home of a convicted felon barred by a manslaughter conviction from purchasing or possessing firearms.[9]

As bad as it was, the problem accelerated in 2022. Ghost gun recoveries by the NYPD increased by more than 200% from the same time last year. *Nilan Decl.* ¶ 11. Between January and June 14, 2022, ghost guns were recovered by NYPD in connection with at least one non-fatal shooting, four robberies, six domestic violence incidents, and seven "shots fired" incidents. *Nilan Decl.* ¶ 16. NYPD officers have seized ghost guns at a school, on public transportation, and in connection with a call for an emotionally disturbed person. *Nilan Decl.* ¶ 16. Already this year, ghost guns have been used in two fatal shootings. *Nilan Decl.* ¶ 15. In May 2022, Edison Cruz, a man with a long criminal history – including an arrest for strolling through the Bronx wearing a

---

[7] *Id.*

[8] *Id.*

[9] Ben Feuerherd, *NYC man allegedly kept 'arsenal' of 'ghost guns' and ammo in Brooklyn home*, N. Y. Post (Oct. 4, 2021), available at https://perma.cc/X6KF-3DP9; *see also* Proshansky Decl. Ex. 2. *See also* Proshansky Decl. Ex. 2 (*United States v. Gary Brown*, Criminal Docket No. 20-352 (E.D.N.Y.) (ECF No. 26, Sentencing Memorandum, filed Oct. 14, 2021)).

bulletproof vest and carrying a grenade launcher – allegedly used a ghost gun to kill a man on a Bronx street, and injure two bystanders, after a confrontation in a fast-food restaurant.[10] In April 2022, a 17-year old allegedly used a ghost gun to shoot and kill a 16-year old girl on a Bronx street, also wounding two teen bystanders walking home from school.[11]

New York City's experience reflects a national trend. According to the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), 45,240 ghost guns were recovered by law enforcement across the country from 2016 through 2021, including 692 in connection with homicides or attempted homicides. ATF, Final Rule, "*Definition of 'Frame or Receiver' and Identification of Firearms,*" Fed. Reg. Vol. 87. No. 80, 24652, 24656 (April 26, 2022). As in New York City, ghost guns are increasingly being put to violent or deadly use across the country, often by people who do not legally have access to firearms.[12]

---

[10]  https://policeblotter.com/edison-cruz-25-arrested-for-the-murder-of-david-scott-31/;  Reuven Fenton, Joe Marino and Jorge Fitz-Gibbon, *'Ghost gun'-obsessed Taco Bell staffer returned to work after fatal shooting: DA,* N.Y. Post (May 4, 2022), available at https://perma.cc/Q8SX-AWFW (captured May, 17, 2022); Joe Marino, Tina Moore, Mark Lungariello and Amanda Woods, *Fast-food worker obsessed with 'ghost guns' killed one, injured two others in Bronx shooting: cops,* N.Y. Post (May 3, 2022), available at https://perma.cc/WTB6-Z75C.

[11] *See* https://nypost.com/2022/04/10/ghost-gun-recovered-after-nyc-shooting/, also available at https://perma.cc/2XCX-U3X3 (captured May 6, 2022);  https://www.fox5ny.com/news/nypd-shooter-used-ghost-gun-in-bronx-killing,  also  available  at  https://perma.cc/4AMW-VMB3 (captured May 10, 2022).

[12] In Los Angeles, ghost guns were linked to 24 murders, eight attempted murders, 20 robberies and  60  assaults  with  a  deadly  weapon  as  of  November  2021. https://www.cnn.com/2022/02/09/us/ghost-guns-credit-cards-la-county/index.html,  available  at https://perma.cc/LMN5-TPP2 (captured May 10, 2022).  Ghost guns accounted for nearly half of the  guns  recovered  in  homicides  in  San  Francisco  in  2020.  See https://www.cnn.com/2022/02/09/us/ghost-guns-credit-cards-la-county/index.html,  available  at https://perma.cc/LMN5-TPP2 (captured May 10, 2022).

Specific incidents involving persons not eligible to possess firearms abound. In 2019, a 16-year-old brought a ghost gun to school in Santa Clarita, California, and shot five students, killing two, before killing himself.  Ghost Guns are Everywhere in California, The Trace (May 17, 2019),

**B.**     **Defendants Illegally Sell New Yorkers Ghost Guns and**
**Ghost Gun Components Easily Assembled Into Ghost Guns**

Each of the Defendants sells ghost guns and ghost gun components into the City through their internet websites. *LeBlond Decl.* ¶4 & *passim*; *Proshansky Decl.* ¶¶ 9-13. Defendants Arm and Ally and Rainier Arms are federal firearms licensees ("FFLs") that also sell serialized firearms. *Proshansky Decl.* ¶¶ 5-6. 80P Builder is an FFL through Salvo Technologies and sells "custom" builds that bundle ghost gun firearm components into one purchase. *LeBlond Decl.* ¶¶ 26-30; *Proshansky Decl.* ¶ 6. Each of the Defendants sell firearms parts, ammunition and/or accessories, such as magazines that are compatible with both conventional firearms and ghost guns. *LeBlond Decl.* ¶¶ 4, *passim*; *Proshansky Decl.* ¶ 4. When selling ghost guns and ghost gun components, Defendants neither conduct background checks nor ensure that purchasers are eligible to purchase firearms. *LeBlond Decl.* ¶¶5. With a few clicks and a credit card, Defendants will arm any New Yorker, including convicted felons, domestic abusers or teenagers, delivering all parts needed to easily and quickly to assemble a lethal weapon.

Using a fictitious, undercover identity but a real Manhattan address, Sergeant Richard LeBlond ("Sergeant LeBlond"), a Deputy Sheriff in the New York City Sheriff's Office, purchased on each Defendant's website unserialized, "unfinished" frames and the other components from

---

https://www.thetrace.org/2019/05/ghost-gun-california-crime/. Also in 2019, a convicted felon in Syracuse, New York, used a ghost gun to shoot his own nephew, a young child, in the back. Douglass Dowty, "DA: Syracuse Man Shot 6-Year-Old Nephew with Untraceable 'Ghost Gun,'" Syracuse.Com, January 6, 2020, https://bit.ly/2wdXnV8. In 2020, a convicted felon used a ghost gun to shoot and injure two Los Angeles sheriff's deputies. NBC Los Angeles, 'Ghost Gun' Kit Maker Sued Over Ambush Shooting of Two Deputies at Compton Transit Station, (Aug, 10, 2021), https://www.nbclosangeles.com/news/local/la-countydeputies-ghost-gun-kit-maker-lawsuit-compton-metro-rail-station/2668483/. In April 2021, a man with a criminal record for unlawfully carrying a concealed weapon used a ghost gun to shoot five people, killing one, in a nighttime shooting spree in San Diego. CBS8, Untraceable 'Ghost Gun" Allegedly Used in Fatal Gaslamp Shooting Spree, (Apr. 23, 2021), available at https://bit.ly/3G2Yyqp.

which operable ghost guns are assembled. *LeBlond Decl*. ¶ 4, *passim*. Via mail or common carrier,

each Defendant delivered the components Sergeant LeBlond ordered, including what Defendants

refer to as "unfinished" (or 80%) frames, to the Manhattan address Sergeant LeBlond provided.

*Id*. None of the Defendants refused these sales into New York City, even while purporting to do

so for other jurisdictions. *See e,g, LeBlond Decl*. ¶¶ 16, 22.[13] None of the Defendants performed a

background check on Sergeant LeBlond or verified that he was eligible to purchase a firearm.

None of the Defendants refused to sell Sergeant LeBlond an "unfinished" frame, although the sales

and deliveries of those expressly-named items were illegal under New York City and State Law

when ordered.

**Arm or Ally**.  Sergeant LeBlond ordered the below ghost gun components from Arm or

Ally on  April 28, 2022, and May 12, 2022, and  they were delivered to a Manhattan address on

May 3, 2022 and May 16, 2022:

- "Black Polymer80 PF940C Pistol Frame Kit"
- "AoA Slide Completion Parts Kit for Glock 19"
- "AoA Duty Series Threaded Barrel for Glock 19"
- "AoA Duty Slide w/ RMR Cut for Glock 19"
- "P80 9mm Frame Parts Kit w/ Complete Trigger Assembly

*LeBlond Decl*. ¶¶ 7-15.

**Rainier Arms.** Sergeant LeBlond ordered the below ghost gun components from Rainier

Arms on April 27, 2022,  May 12, 2022, and May 18, 2022 and they were delivered to a Manhattan

address on May 2, 2022,  May 24, 2022 and May 25, 2022:

- "Polymer80 PF940SC 80% Textured grip Frame for Glock 26/27 Gen 3"
- Two "Glock 9mm OEM Double Stack Magazine – 24RD"
- "Polymer80 9mm Complete Frame Parts Kit for Glock Gen 3 – Black"
- "Polymer80 PF-Series Slide Parts Kit for Glock – Black/Red"

---

[13] *See also, e.g.,* https://www.armorally.com/shop/polymer80-pf9ss-g43-pistol-frame-kit/ ("No
Sales to NJ, CT, IL, HI, MD and D.C.");

- "Polymer80 80% PF940v2 Textured Grip for Glock 17/22 Gen 3"
- "Spinta Precision Allegiance Slide for Glock 17 Gen 3"
- "Faxon Firearms Flamed Barrel for Glock 17 – Tin"

*LeBlond Decl.* ¶¶ 16-25.

**80P Builder**.  Sergeant LeBlond ordered the below ghost gun components from 80P

Builder on May 11, 2022, and they were delivered to a Manhattan address on May 16, 2022:

- "F[lat]D[ark]E[arth] PF940v2 80% Frame G17, G34…"
- "Lower Parks Kit for 9mm"
- "Agent-17 Custom" package, including
  - slide ("Agent-17 Armor Black Cerakoted for G17 Glock 17")
  - barrel ("80PBuilder BARREL Stainless Steel for Glock 17 G17")
  - sights ("HD Fiber Optic Sights")
  - guide rod ("Guide Rod for G17, 34, 17L")
  - Pre-installed upper parts kit
  - Billet extractor upgrade

*LeBlond Decl.* ¶ 26 – 30.

**Rock Slide USA**.  Sergeant LeBlond ordered the below ghost gun components from Rock

Slide USA on May 11, 2022, and May 21, 2022, and they were delivered to a Manhattan address

on May 16, 2022 and May 27, 2022:

- black "Polymer80 PF940C frame"
- "Rock Slide Un-Cut Upper"
- "Internal Upper Parts Kit w/ Upgraded Billet Extractor (Installed) W/no recall spring"
- "Recoil Spring Guide Rod, Stainless steel"
- "Lower Parts Kit with Standard Trigger"
- "Glock 9mm Extended Magazine 32rd PRO MAG"
- "Rock Slide G19 Gen 3 Upper"
- "Rock Slide Stainless Steel barrel"

*LeBlond Decl.* ¶¶ 31 – 36.

**Indie Guns**.  Sergeant LeBlond ordered the below ghost gun components from Indie Guns

on  May 18, 2022, and they were delivered to a Manhattan address on June 9, 2022:

- "Complete Frame Assembly for G17, G17L, G22, G24, G31, G34, G35," including
  - Polymer80 PF940v2 frame kit
  - "P80 9mm Frame Parts Kit w/ Trigger Assembly"

- o  Glock-17 compatible 17-round magazine
- "Kangal-17 Tiffany Blue Complete Slide Assembly, " including
  - o  Glock-17 compatible slide
  - o  Slide parts kit
  - o  Barrel
  - o  Sights, all preinstalled

*LeBlond Decl.* ¶ 37-39.

Defendants' sales to Sergeant LeBlond are the tip of the iceberg. Rainier Arms shipped at least 846 packages to purchasers in New York state between January 4, 2021 and April 28, 2022, including at least 69 packages shipped to New York City addresses during that period. *Proshansky Decl.* ¶ 9.  Arm or Ally shipped at least 511 packages to purchasers in New York State between January 3, 2021 and June 7, 2022, including at least 367 packages to New York City. *Id.*. Five of Arm or Ally's shipments went to a City resident later arrested in possession of 14 ghost guns – 7 handguns and 7 assault-style rifles. *Id.* ¶11. Another City resident indicted for 29 counts of violating the City's prohibition on possessing unfinished frames, allegedly made online purchases of nine separate ghost gun components from Arm or Ally between July 2020 and October 2021, including frames or receivers and completion parts kits. *Id.* ¶12; Ex. 1.

Defendant 80P Builders shipped at least 258 packages to New York state between April 21, 2021 and May 26, 2021, including at least 65 packages to New York City addresses during that period. *Id.* ¶ 9.  In 2021, at least four individuals arrested in New York City with ghost guns received one or more deliveries from 80P Builder, including Edison Cruz who, as described above, *supra* at 5, was arrested and charged with murder in 2022; a person arrested following a street encounter; a person arrested following a car stop; and a person who, after having received four deliveries from 80P Builders in 2021, was arrested in possession of three receivers. *Id.* ¶ 10.

As is plain from the instances in which the contents of Defendants' packages have been identified, it is likely that the contents of many of the Defendants' other City-bound packages contained illegal frames and receivers.

### C.  Defendants' Illegal, Unserialized Frames Are Easily Assembled Into Deadly Weapons

Defendants tout the simplicity of assembling a ghost gun from the products they market, sell and deliver into New York City. *Proshansky Decl.* ¶ 8. Arm or Ally states on its website that its Polymer 80 kits "include an 80% Polymer frame, j[i]g, and all tooling required to finish the frame using a drill press and cross-vise," allowing a purchaser to "[i]n the comfort and privacy of your own home …  assemble your own firearm for personal-use with nothing more than simple hand-tools." *LeBlond Decl*. ¶ 12. *See also* https://rockslideusa.com/shop/, available at https://perma.cc/656Z-KM99 (last visited June 26, 2022) ("Polymer 80, 80% lowers come with everything needed to make your own custom, Glock compatible pistol at home …. No license required"); https://www.rainierarms.com/rifle-parts/receiver-parts/lone-wolf-arms-freedom-wolf-80-glock-19-compatible-pistol-frame/ (last visited June 16, 2022) .

The New York City Sheriff's Office confirmed the ease with which the Defendants' ghost gun components can be assembled into a deadly weapon. Using an unserialized "unfinished" frame and other components purchased from Arm or Ally, Lieutenant Fredric Davis from  the Sheriff's Office assembled a fully functioning ghost gun in approximately an hour and a half, using common household tools. *Rosa Decl*. ¶ 17; *Rosa Decl*. Exs. 1, 4. Lieutenant Davis performed a handheld test firing exercise, where the ghost gun successfully completed the full cycle of firearm operation: feeding, firing, extraction and ejection, including firing five rounds of ammunition. *Rosa Decl*. ¶ 20; *Rosa Decl*. Ex. 5.

## LEGAL STANDARD—PRELIMINARY INJUNCTION

The City seeks a preliminary injunction to stop Defendants from continuing to violate the City and State prohibitions on sales of ghost guns into New York City, *see New York City Administrative Code* ("Ad. Code") § 10-314; *New York Penal Law* §§ 265.60-.64 (sale); 265.01(9)-(10) (possession), and to stop Defendants from violating the General Business Law. *See Gen. Bus. Law* § 898-a *et seq.* A preliminary injunction requires a showing of (1) irreparable harm; (2) a likelihood of success on the merits; (3) that the balance of the equities tips in the movant's favor and (4) that a preliminary injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120 (2d Cir. 2010); *Resolution Tr. Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir. 1991). Where, as here, a government is a party to the suit, the final two factors merge. *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58-58 (2d Cir. 2020).

**Irreparable Harm** – Government actors seeking to enjoin a statutory violation, as here, need not establish irreparable harm: when the statute authorizes injunctive relief for its violation, an injunction will issue upon a showing of probable cause to believe that a statutory violation is occurring. *See City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010) ("requiring a party seeking a statutorily-sanctioned injunction to make an additional showing of irreparable harm . . . is not required"). Under state law, a government need not demonstrate irreparable harm even when the municipal statute does not provide expressly for injunctive relief. *City of N.Y. v. Beam Bike Corp.*, 2022 N.Y. App. Div. Lexis 3684 (1st Dep't June 9, 2022) ("A municipality seeking a preliminary injunction to enforce compliance with its ordinances or regulations in order to protect the public interest … need only demonstrate a likelihood of success on the merits and that the equities weigh in its favor; it is not required to show proof of irreparable harm.") (citing *People v Apple Health & Sports Clubs*, 174 A.D.2d 438, 438-39 (1st Dep't 1991),

*aff'd* 80 N.Y.2d 803 (1992).[14] Here the City is, among other things, seeking injunctive relief under General Business Law § 898-a *et seq*, which specifically authorizes the City to enjoin Defendants from creating a public nuisance through their unlawful sales of ghost guns and ghost guns components. Accordingly, the City need not show irreparable harm.

Nonetheless, we amply demonstrate irreparable harm below, as Defendants are violating State and local law banning sales and deliveries into the City and harming the City's residents. *See Ad. Code § 10-314; N.Y. Penal Law §§ 265.60-.64; 265.01(9)-(10).*

**Success on the Merits** – A plaintiff must establish that its claims against a party to be enjoined will succeed "more probably than not," *see Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988) (citation and quotation omitted), unless the relief sought "grants the movants substantially all the relief they ultimately seek," in which case the more stringent "substantial likelihood of success" standard applies. *Lichtenberg v. Besicorp Grp. Inc.*, 43 F. Supp. 2d 376, 384 (S.D.N.Y. 1999).[15] Plaintiff more than satisfies this element of the standard for preliminary relief.

---

[14] In diversity jurisdiction, federal courts must apply the substantive law of the forum state, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), particularly where, as here, injunctive relief is sought. 13 Moore's Federal Practice - Civil § 65.07 (2022) (citing *Lauf v. E.G. Shinner & Co., 303 U.S. 323, 327–328* (1938); *accord SyncSort Inc. v. Innovative Routines, Int', Inc.*, 2011 U.S. Dist. LEXIS 92321 (D.N.J. Aug. 18, 2011). Here both New York law and federal law recognize that government actors need not show irreparable harm when seeking to enjoin statutory violations. *See City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120 (2d Cir. 2010); *Beam Bike Corp.*, 2022 N.Y. App. Div. Lexis 3684 (1st Dep't June 9, 2022).

[15] The Second Circuit will at times substitute for "success on the merits" a showing of "serious questions on the merits and a balance of hardships equities decidedly favoring the moving party." *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010). The "serious questions" test is intended for situations in which a district court "cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims," but the costs outweigh the benefits of allowing the challenged conduct to continue. *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citing *F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc..*, 597 F.2d 814, 815-19 (2d Cir. 1979).

**The Public Interest** – The public interest is presumptively served and the equities favored when a government actor seeks to remediate a statutory violation. *California v. Am. Stores Co.*, 495 U.S. 271, 295 (1990) ("In a Government case the proof of the violation of law may itself establish sufficient public injury to warrant relief."). In making specific conduct unlawful by statute, the legislature has determined "that such conduct, in and of itself, is harmful to the public," and thus the public interest would be served by enforcement. *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010); *Golden Feather Smoke Shop, Inc.*, 2009 U.S. Dist. LEXIS 76306, at *112 (E.D.N.Y. Aug. 25, 2009) ([A] statute's enactment constitutes Congress' implied finding that violations will harm the public …") (quoting *United States v. Blue Ribbon Smoked Fish, Inc.*, 179 F. Supp. 2d 30, 49-50 (E.D.N.Y. 2001) (internal quotation marks and citations omitted)). We demonstrate below that enjoining conduct made illegal under state and City law, and constituting a public nuisance under the General Business Law and common law, serves the public interest.

## ARGUMENT

### POINT I.

### THE COURT SHOULD ENJOIN DEFENDANTS' SALES AND DELIVERIES OF GHOST GUNS, FRAMES AND RECEIVERS, AND GHOST GUN COMPONENTS INTO NEW YORK CITY

Defendants' continued sale and delivery of ghost guns and ghost gun components into the City should be preliminarily enjoined. Defendants' actions violate state and City laws prohibiting those sales and deliveries, and create and contribute to a public nuisance under the General Business Law and common law.

### A. Although Not Required To, The City Has Shown Irreparable Injury

As explained above, the City need not show irreparable harm when the statute authorizes injunctive relief for its violation, as the General Business Law § 898-d does here.[16] In any event, the facts adduced here are more than sufficient to establish irreparable harm. Gun crimes are harms to the public health and safety – the Legislature very recently declared a "public health crisis of gun violence in this state." *Laws 2021, ch 237, § 1.* Shipping ghost guns into New York City – which is illegal under City and State law – including to persons either prohibited from or unlicensed for gun possession, and the escalating number of crimes including murder and other violent crimes, tied to guns that cannot be traced, epitomizes irreparable harm to the public health and safety.

New York City is seeing an explosion of unserialized, illegal ghost guns. *Nilan Decl.* ¶ 11. Many of these weapons, are being recovered in connection with shootings, homicides, and domestic violence incidents. *Nilan Decl.* ¶¶ 11 – 16. In 2022, two people have already died in ghost gun- shootings. Nilan Decl. ¶ 15. In one of the most heartbreaking incidents to date, an honor student was gunned down walking home from school. *Nilan Decl.* ¶ 15; *see supra*, fn.11. Two other school-age children were injured in the same incident. *Id.* Despite the steps taken by the City, including establishing an NYPD team to address exclusively ghost guns and enacting Administrative Code § 10-314 prohibiting the sale of "unfinished" receivers or frames, the number of ghost gun recoveries continues to skyrocket, as do the violent incidents connected with ghost guns.

---

[16] *Gen. Bus. L.* § 898-d, Enforcement, expressly provides "a city corporation counsel on behalf of the locality, [to] bring an action in the supreme court or federal district court to enjoin and restrain … violations [of the statute]."

As the Nilan Declaration demonstrates, these events have increased explosively in less than five years. *Nilan Decl.* ¶ 11. Inspector Nilan describes a growing number of ghost guns in the hands of minors and convicted felons, demonstrating substantial evidence of irreparable harm, to which the City government must respond on behalf of the public. *Id.* ¶ 14. Ghost guns make New York City's streets, schools, public spaces, and homes – and NYPD patrol officers' jobs – significantly more dangerous. *See Id.* ¶¶ 13-16. There is evidence that some of the Defendants shipped hundreds of packages into New York State and New York City over the last several years, likely containing ghost gun-related items. *Proshansky Decl.* ¶ 9. It appears some of the Defendants' ghost gun sales were made to persons later arrested for alleged criminal conduct. *Id.* ¶ 10-12.

Each of Defendants' illegal sales into New York City of ghost gun components puts another unserialized, untraceable firearm into circulation, and has the potential to lead to another tragedy. Indeed, 80P Builder made sales to, among others, Edison Cruz, who was recently charged with murder for shooting a man in the Bronx, as well a person arrested following a street encounter and a person arrested following a car stop. *Proshansky Decl.* ¶ 10. Similarly, Defendant Arm or Ally made sales and deliveries to one City resident later arrested with 14 ghost guns and another City resident indicted for 29 counts of violating the City's prohibition on possessing unfinished frames. *Id.* 11-12; Ex. 1.

Inspector Nilan also shows ghost gun sales and delivery into the City make it harder for law enforcement to do its job. *Nilan Decl.* ¶¶ 5,17. The NYPD has been forced to respond to a newly-emergent threat, requiring shifts in strategy and resources that cannot be resolved by mere dollars, even if available. *Id.* . at ¶¶ 3, 6 - 10. The City has been forced to counter the growing scourge of ghost guns, incurring significant law enforcement costs, for example by establishing the Major Case Field Investigation Team, devoted solely to ghost guns. *Id.* ¶¶ 5; 17.

Whether or not it needs to, the City has shown irreparable harm. *See United States v. Ciampitti*, 583 F. Supp. 483, 498 (D.N.J. 1984) ("It is clear that the Government has made a showing of irreparable injury whether or not such a showing is required).

### B. The City Is Likely To Succeed On The Merits Of Its Claim That Defendants Create A Statutory Public Nuisance Under General Business Law § 898-b

The City need not meet the substantial likelihood standard here – although it does – because the injunction requested does not grant "substantially all of the relief ultimately sought," in the City's lawsuit. *Lichtenberg*, 43 F. Supp. 2d at 384. On this motion, the City seeks to enjoin Defendants' deliveries into New York City, and ensure Defendants' compliance with law, but leaves for another day the more arduous task of requiring Defendants to assist in abating the nuisance they have caused, a goal that will be achieved by discovery of Defendants' records identifying City residents that Defendants have illegally armed. The injunction sought here accordingly does not provide the City with substantially all the relief ultimately sought in this action.

The City, more probably than not, will demonstrate the Defendants' unlawful conduct violates the General Business Law and creates or contributes to a statutory public nuisance. Under the General Business Law, Defendants are "gun industry member[s]" who sell, manufacture, market, and import a "qualified product," and knowingly or recklessly contribute to a condition that "endanger[] the safety or health of the public." Defendants also violate the General Business Law and create a public nuisance by failing to "establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state." *Gen. Bus. Law § 898-b*. New York General Business Law § 898-b provides:

1.      No gun industry member, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain or contribute to a condition in New York state that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product.

2.      All gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product in New York state shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state.

**1.**      **Gun Industry Member** – Defendants are each a "gun industry member" because each of them is "engaged in the sale, manufacturing, distribution, importing or marketing of firearms, ammunition, ammunition magazines, and/or firearms accessories." *Gen. Bus. Law § 898-b (4)*. Defendants Arm or Ally and Rainier Arms are federal firearms licensees ("FFLs") and sell through their website ghost guns, ghost gun components, conventional, serialized firearms, and firearms accessories. *Proshansky Decl.* ¶¶ 5-6.  Defendant 80P Builder is an FFL through Salvo Technologies, and sells ghost guns, ghost gun components, and firearm accessories through its website. *Id.*  Neither Rock Slide USA nor Indie Guns is listed as an FFL, but they each sell ghost guns, ghost gun components, such as frames and receivers, ammunition magazines, and firearms accessories. *Id.* ¶¶ 4, 7; *LeBlond Decl.* ¶¶ 31, 37.  Ghost guns and frames and receivers are "firearms" under federal law. *See Title 18 § 921(a)(3)*.

**2.**      **Qualified Products** – Defendants sell "qualified products" because they sell firearms and firearm components. The General Business Law provides that a "'[q]ualified product" shall have the same meaning as defined in 15 U.S.C. section 7903(4)." *Gen. Bus. Law § 898(a)(6)*. Section 7903(4) defines a "qualified product" as:

a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of title 18, United States Code), … *or a component part of a firearm* or ammunition, that has been shipped or transported in interstate or foreign commerce.

Title 18 U.S.C. § 921(a) (3) defines a firearm as:

> (A) any weapon … which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; and/or are (B) the frame or receiver of any such weapon, *id.*, or are *a component part of a firearm or ammunition*. …

The items delivered to Sergeant LeBlond by Defendants " are "designed to or may readily be converted to expel a projectile by the action of an explosive," and therefore qualify as firearms and, accordingly, "qualified products."

Courts have repeatedly found items short of a completed gun qualify as a "firearm" if easily turned into a functional weapon. The Second Circuit has held that a weapon "which can be converted by a relatively simple operation taking only a few minutes is a 'firearm' and subject to federal controls." *U.S. v. 16,179 Molso Italian .22 Caliber Winler Derringer Starter Guns*, 443 F.2d 463, 465 (2d Cir.1971); *United States v. Morales*, 280 F. Supp. 2d 262, 272-73 (S.D.N.Y. 2003) (collecting cases where inoperable weapons needing replacement parts were held to be "firearms"; partially-disassembled pistol was a "firearm" because "[w]hether in pieces or whole, it is clear to this Court that the item . . . was clearly 'designed to,' and could 'readily be converted to' expel a projectile"); *accord U.S. v. Mullins*, 446 F.3d 750, 756 (8th Cir. 2006) (starter gun that "could be converted to expel a projectile, without any specialized knowledge, in less than an hour, and in minutes by an expert" met the definition of a firearm); *United States v. Wick*, 697 F. App'x 507, 508 (9th Cir. 2017) (upholding conviction for manufacturing and selling unlicensed firearms where defendant "was selling complete Uzi parts kits that could 'readily be converted to expel a projectile by the action of an explosive,' thus meeting definition of a firearm").

The websites of Arm or Ally, Ranier Arms and Rock Slide USA, all explain to prospective customers that the Defendants' products may be "readily converted" into ghost guns at home, *Proshansky Decl.* ¶ 8, a promise borne out by easy and quick ghost gun build detailed in the Rosa Declaration. *Rosa Decl.* ¶ 17.

Even if Defendants' ghost gun components, including their so-called "unfinished" frames, were not so "readily converted' into operable guns, they would meet the statutory definition of a firearm under 18 U.S.C. § 921(a) (3) – and therefore would be a "qualified product" under the General Business Law – because they are "designed" to fire a projectile. The statute is "clearly written in the disjunctive," so that a weapon is a firearm if it may be "readily converted" to expel a projectile *or* is 'designed to' do so. *U.S. v. Rivera*, 415 F.3d 284, 287 (2d Cir. 2005). There is no requirement that they possess both features. *Id.* Defendants' ghost guns and ghost gun components were undeniably "designed to" fire projectiles.

In any event, Defendants also sell "qualified products" because they sell the "frame or receiver" of a firearm or "a component part of a firearm," bringing them within both 15 U.S.C. section 7903(4) and 18 U.S.C. § 921(a) (3). Certainly, Defendants' ghost gun components, including their "unfinished" frames, are meant to and are easily "finished" and assembled into fully functional firearms or designed for that purpose.

3.   **Conduct Unlawful In Itself or Unreasonable Under the Circumstances** – Defendants' conduct is "unlawful in itself" because their sales and deliveries into New York City violate N.Y.C. Admin Code § 10-314 and Penal Law § 265.63 and likely § 265.64. The deliveries are "knowing" or "reckless" because as dealers in hazardous products, Defendants are deemed to have knowledge of all laws and regulations governing their products. *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 565 (1971) (where dangerous devices are involved, "the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation."); *United States v. Weintraub*, 273 F.3d 139, 147 (2d Cir. 2001) (Supreme Court's decision in *United States v. Int'l Minerals & Chems. Corp.*, 402 U.S. at 562-63, held that the phrase "knowingly violates" "did not require

knowledge that the defendant's conduct was unlawful"; "no intent to abrogate the bedrock common law principle that ignorance of the law is not a defense.").

4.    **Endangers Public Health and Safety** – Defendants' sales and deliveries unquestionably "endanger[] the safety or health of the public," *Gen. Bus. Law § 898-b,* by contributing to the flood of dangerous, untraceable ghost guns, which in 2022 alone, have been used in homicides and recovered in public spaces, like schools. *Nilan Decl.* ¶¶ 15 - 16. Defendants' conduct thus violates the General Business Law § 898-b(1).

5.    **Reasonable Controls** – Defendants' conduct also violates General Business Law §§ 898-b(2). Defendants self-evidently have not "utilize[d] reasonable controls and procedures to prevent [their] qualified products from being possessed, used, marketed or sold unlawfully in New York state," as they did nothing to prevent their products from being bought by a purchaser with a New York City address. If Defendants had used reasonable preventative controls and procedures, they each would have declined to ship product to a New York City address. The reasonableness of declining a sale is unequivocally demonstrated by the several ghost gun retailers who declined the City's orders because the shipping address was in New York. *LeBlond Decl.* ¶ 40; *see also City of Gary v. Smith & Wesson*, 801 N.E.2d 1222, 1234-35 (Ind. 2003) ("Intentional failure to observe a statutory standard is presumptively unreasonable.").

Thus, there is a substantial likelihood that the City will establish that Defendants violated the General Business Law §§ 898-b(1) and (2) and thus created or contributed to a statutory public nuisance because "A violation of subdivision § 898-b (1) or (2) that results in harm to the public shall hereby be declared to be a public nuisance." *Gen. Bus. Law § 898-c.*

### C. There Is A Substantial Likelihood That The City Will Succeed On The Merits Of Its Claim That Defendants Create A Common Law Public Nuisance

By the same conduct that gives rise to a statutory nuisance, Defendants cause or contribute to a common law public nuisance. In New York, public nuisance is defined as "a substantial interference with the exercise of a common right of the public, thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (internal quotation marks omitted) (quoting *532 Madison Ave. Gourmet Foods v. Finlandia Ctr.*, 96 N.Y.2d 280, 292, (2001)). [17]

The City, as a municipal corporation, may "bring an action to restrain a public nuisance which allegedly has injured the health of its citizens." New *York Trap Rock Corp. v. Town of Clarktown,* 299 N.Y. 77, 83-84 (1949)("[I]t is clear that a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit."). "Where the public health is a factor, a municipality's right to bring 'an action [for an injunction] may be tantamount to its right of survival.'" *City of New York v. Beretta U.S.A. Corp.,* 315 F. Supp. 2d 256, 273-74 (E.D.N.Y. 2004) (quoting New *York Trap Rock Corp. v. Town of Clarktown,* 299 N.Y. 77 (1949)).

---

[17] "To be reckoned as 'considerable,' the number of persons affected need not be shown to be 'very great.' [It is] enough that so many are touched by the offense and in ways so indiscriminate and general that the multiplied annoyance may not unreasonably be classified as a wrong to the community." *People v. Rubenfeld,* 254 N.Y. 245, 247 (1930) (internal citation and brackets omitted); *see also Town of Mount Pleasant v. Van Tassell,* 7 Misc.2d 643645 (Sup. Ct. Westchester Cnty. 1957) (describing a public nuisance as one that "causes substantial annoyance and discomfort indiscriminately to many and diverse persons who are continually or may from time to time be in the vicinity"). The incidents described in the Nilan Declaration, including shootings committed with ghost guns, often injuring random passersby on the City's streets, certainly qualify as affecting a "considerable" number of persons.

To establish a common law public nuisance claim, "a plaintiff must allege: (1) the existence of a public nuisance; [and] (2) conduct or omissions by a defendant that create, contribute to, or maintain the public nuisance." *City of N.Y. v. Artisan Vapor Franchise LLC*, 2020 U.S. Dist. LEXIS 205315, *4-*5 (E.D.N.Y. Nov. 2, 2020) (quoting *Hicksville Water Dist. v. Philips Elec. North America Corp.*, 2018 U.S. Dist. LEXIS 53342 (E.D.N.Y. Mar. 29, 2018)).

It is clear that illegally possessed handguns constitute a public nuisance. *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 2008 U.S. Dist. LEXIS 87236, at *12-13 (E.D.N.Y. Sep. 17, 2008) (stating as a finding of fact that "[a] public nuisance exists in the City of New York, in the form of large numbers of illegally-possessed firearms. Illegally possessed guns interfere with the health and safety of a large number of persons within the City."), *rev'd on other grounds*, *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011). Indeed, in *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 519 (E.D.N.Y. 2003), the district court's express finding of fact was that "[p]laintiff demonstrated that a public nuisance exists in New York in the form of widespread access to illegal firearms that causes harm to the population at large in that it endangers and injures the property, health, safety or comfort of a considerable number of persons." *Id.* Those harms are documented in detail above. *See supra*.

Defendants are liable for this public nuisance by virtue of their facial violation of the Administrative Code prohibiting their sales. *See City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 350-51 (E.D.N.Y. 2008) (enactment of a statute prohibiting the conduct in question supports a claim of common law public nuisance). Defendants sales and deliveries into New York cause and contribute to the pool of illegally-possessed guns. *Hine v. Aird-Don Co.,* 232 A.D. 359 (3d Dep't 1931) ("Everyone who creates a nuisance or participates in the creation or maintenance thereof is liable for it."); *McNulty v. Ludwig & Co.,* 153 A.D. 206, (2d Dep't 1912)

(once a public nuisance is established "all who participated in creating or maintaining such nuisance were jointly and severally liable for it"); *Uggla v. Brokaw*, 117 A.D. 586 (1st Dep't 1907) (well settled "that everyone who creates a nuisance, or participates in the creation or maintenance thereof, is liable for it …."). Thus, there is a substantial likelihood that the City will establish that Defendants are causing and contributing to a common law public nuisance.

### D. Defendants Are Likely To Continue Their Violations

Issuance of an injunction requires showing of "a reasonable likelihood that the wrong will be repeated." *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972); *Blue Ribbon Smoked Fish*, 179 F. Supp.2d at 50 ("To enjoin future behavior, the government must show that defendants have violated the [statute] and that there is some reasonable likelihood that the violations may recur."). This determination "depends upon the totality of the circumstances," bearing in mind that "the commission of past illegal conduct is highly suggestive of the likelihood of future violations." *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975).

It is likely that Defendants will continue their violations. Defendants' business model depends on selling and shipping products illegal under New York law—ghost guns and "unfinished" frames; Defendants have continued to do so two and a half years after it became illegal to do so; Defendants are deemed to know the law, and have demonstrably flouted it; and Defendants' conduct was hardly isolated or non-recurring, where there is evidence of hundreds of shipments by several Defendants into New York. *Proshansky Decl.* ¶ 9. Given Defendants' past behavior, they will likely continue to exploit their opportunities to sell into New York, and their sales can be expected to continue. Indeed, upon learning of the instant lawsuit, Defendant Indie

Guns denied any wrong-doing, indicating no intention to change its conduct.[18] *See Commodity Futures Trading Comm 'n,* 560 F.2d at 142, 144 (probability of future violations may be inferred from past unlawful conduct; clear likelihood of future violations where company maintained its activities were legitimate and persisted in those activities until the day of court hearing).[19]

### E. The Public Interest and the Equities Tip Sharply in the City's Favor

The public interest and equities tip sharply in the City's favor. Here, the City seeks to protect the health and safety of its residents by stemming the flow of ghost guns and ghost gun components into the City. This public purpose is enshrined in City law – NYC Admin. Code 10-314—prohibiting the possession and sale of "unfinished" frames and receivers. The City's interest in obtaining preliminary relief is far greater than Defendants' interest in continuing unlawful sales into the City. Indeed, Defendants have no legitimate interest in engaging in conduct that is barred by local and state law.  -

---

[18] *See* https://twitter.com/AdmiralWaugh/status/1542181304955031552 ("The NY AG and NYC Mayor are trying to prove political points by filing a groundless lawsuit against my client Indie Guns") (last visited June 29, 2022). The statement concedes that Defendant Indie Guns deals in firearms, referencing an "attack" on "Second Am[endment] rights." *Id.*

[19] Defendants conduct thus satisfies the four requirements for determining the likelihood of future violations: (1) the degree of scienter involved, (2) the isolated or recurring nature of the activity, (3) the defendant's appreciation of the wrongdoing, and (4) the defendant's opportunities to commit future violations. *See Webb,* 2007 U.S. Dist. LEXIS 7307, at *7 (citations omitted); *SEC v. Commonwealth Chem. Secs., Inc.,* 574 F.2d 90, 100 (2d Cir. 1978).

## CONCLUSION

For all of the reasons set forth above, the City of New York respectfully requests that the Court issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 enjoining Defendants Arm or Ally, Rainier Arms, 80p Builder, Rock Slide USA and Indie Guns from selling and delivering into New York City "ghost guns," "80% receivers or frames," "unfinished frames or receivers," unserialized "receivers" or "frames," or any kits or collections of gun parts that is "unfinished" or "unserialized" that can be assembled into a firearm.

Dated:      New York, New York
             June 29, 2022

                               **HON. SYLVIA O. HINDS-RADIX**
                               Corporation Counsel of the
                                 City of New York
                               *Attorneys for Plaintiff The City of New York*
                               100 Church Street, Rm. 20-099
                               New York, New York 10007
                               (212) 356-2032

                               By: _____s/_____
                                   Eric Proshansky
                                   Melanie Ash
                                   Doris Bernhardt
                                   Gail Rubin
                                   Assistant Corporation Counsels