UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

THE CITY OF NEW YORK,

        Plaintiff,

  v.                                          22-cv-5525
                                               (Furman, J.)

ARM OR ALLY, LLC, *et al.*,

        Defendants.

---------------------------------X

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

The United States of America respectfully submits this Statement of Interest in accordance with federal statutes that authorize the United States Department of Justice "to attend to the interests of the United States" by "argu[ing] any case in a court of the United States in which the United States is interested." 28 U.S.C. §§ 517, 518.[1]

This Statement of Interest is submitted in litigation filed on June 29, 2022, by the City of New York (City) against multiple firearm businesses that have allegedly sold tens of thousands of illegal, unfinished firearm frames and receivers to New Yorkers that were then converted into unserialized, untraceable handguns and assault-style weapons, known as "ghost guns" or privately made firearms. The City brought suit to "end the tide of illegal 'ghost guns' flowing into New York City," Compl. ¶ 1, in violation of the Gun Control Act of 1968, *as amended*, 18 U.S.C. §§ 921 *et seq*. (GCA). The City's Complaint notes that the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has explained that "the absence of serial numbers makes it 'more difficult for Federal, State, and local law enforcement to identify and prosecute illegal firearms traffickers who are often tied to violent criminals and armed narcotics traffickers.'" *Id.* ¶¶ 17, 34. The City adds that, "in a May 9, 2022 letter to a ghost gun components retailer, ATF explained that, 'notwithstanding the recently announced regulations and definitions' in the final rule [87 Fed. Reg.

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." Under 28 U.S.C. § 518, "[w]hen the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any officer of the Department of Justice to do so." These statutes provide a mechanism for the United States to submit its views in cases in which the United States is not a party, *see, e.g., Application of Blondin v. Dubois*, 78 F. Supp. 2d 283, 288 n.4 (S.D.N.Y. 2000); *Ren-Guey v. Lake Placid 1980 Olympic Games*, Inc., 49 N.Y.2d 771, 773 (1980) (per curiam), and are not intended to "subject[] it to the general jurisdiction of this Court." *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252-53 & n.5 (D.C. Cir. 2002).

1

24,652 (Apr. 26, 2022)], it has 'always been' ATF's position that the sale and transfer to a single customer of 'all the components necessary to produce a fully functional firearm,' whether sold in 'one or multiple transactions,' constitutes the sale of a 'firearm' under the [GCA] and is unlawful unless made according to the requirements of the [GCA], including serialization and a background check." *Id.* ¶ 35, n. 12 (citations omitted).

Like the City of New York, the United States has serious concerns about the proliferation of untraceable firearms easily assembled from firearm parts kits and unfinished frames and receivers. Companies have sold these items directly to consumers without conducting background checks or maintaining records of such sales. As a result, persons prohibited from possessing firearms have been able to buy these kits and easy-to-complete frames and receivers and easily make their own firearms at home. When such firearms are used in crimes and recovered by law enforcement, they cannot typically be traced because they lack a serial number and manufacturer's markings, which include the name of the manufacturer and the manufacturer city and state, and because they were distributed without records sufficient to identify the specific unfinished frame or receiver that was sold to a specific customer.

Indeed, during a February 3, 2022 visit to the New York City Police Department headquarters, the President of the United States lamented the proliferation of these firearms, as they "can be purchased in parts, [are] assembled at home [with] no serial number[,] can't be traced[,] [a]nd they're as deadly as any other weapon out there."[2] Law enforcement has increasingly recovered firearms built from these weapon parts kits or otherwise made from unfinished frames and receivers at crime scenes across New York State.

---

[2] *See* https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/02/03/remarks-by-president-biden-at-a-gun-violence-prevention-task-force-meeting/.

2

It is thus of acute interest to the United States to ensure that the Court is informed of its views of the GCA and its implementing regulations, in particular ATF's Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (Rule), which became effective on August 24, 2022, during the pendency of this litigation.

Congress enacted the GCA after finding that "existing Federal controls over [widespread traffic in firearms moving in interstate commerce] do not adequately enable the States to control this traffic within their own borders." Pub. L. No. 90-351, Title IV, § 901(a)(1), 82 Stat. 197, 225 (1968). Congress specifically determined that "only through adequate Federal control . . . over *all* persons engaging in the businesses of importing, manufacturing, or dealing in [these weapons], can this grave problem be properly dealt with." *Id*. § 901(a)(3), 82 Stat. at 225 (emphasis added). Accordingly, Congress enacted requirements for persons engaging in the business of importing, manufacturing, or dealing in "firearms." *See generally* 18 U.S.C. §§ 922-923.

Congress requires individuals and entities engaged in the business of importing, manufacturing, or dealing in firearms to receive a federal firearms license, *id*. § 923(a), to maintain records of firearm acquisition and transfer as prescribed by regulation, *id*. § 923(g)(1)(A), and to conduct background checks before transferring firearms to a non-licensee, *id*. § 922(t). Congress requires licensed importers and manufacturers to identify each firearm they import or manufacture by means of a unique serial number on the receiver or frame of the weapon and other markings as prescribed by Federal regulation. *Id*. § 923(i). Congress has also vested in ATF the authority to promulgate regulations "necessary to carry out the provisions of" the GCA. *Id*. § 926(a). Federal regulation requires that the frame or receiver must also be marked with either the name, and city and state where the licensee maintains their place of business; or their name and the serial number beginning with their abbreviated federal firearms license number. 27 C.F.R. § 478.92(a)(1)(i).

Congress defined "firearm" to include "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or receiver of any such weapon."  *Id*. § 921(a)(3).  Congress, however, did not define the terms "frame" or "receiver."  *See id*. § 921.  Over fifty years ago, ATF defined the statutory term "frame or receiver"[3] as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion."  Final Rule, Commerce in Firearms and Ammunition, 33 Fed. Reg. 18,555, 18,558 (Dec. 14, 1968), *codified at* 27 C.F.R. § 478.11.  This definition was meant to provide direction as to which portion of a weapon is the frame or receiver for purposes of licensing, serialization, and recordkeeping, thereby ensuring that a component necessary for the weapon's functioning could be traced if the weapon was used in a crime.  Rule, 87 Fed. Reg. at 24,652.

Technological advances in firearm design, however, resulted in upwards of 90 percent of commercially manufactured firearms no longer having a frame or receiver housing all components specified by the former regulatory definition.  *Id*. at 27,722.  These advances also allowed for the proliferation of unfinished firearm parts kits and easy-to-complete unfinished frames or receivers, that were routinely distributed by licensed and unlicensed individuals and entities to consumers without maintaining any records or conducting background checks.  *Id*.  These kits and partially complete frames and receivers allow unlicensed persons to make firearms quickly and easily.  *Id.* at 24,652.  Because such privately made firearms typically lack serial numbers, it is extremely difficult for law enforcement to trace them when used in a crime.  *Id*. at 24,652, 24,659.

---

[3] Previously, ATF regulations included definitions for both "firearm frame or receiver" and "frame or receiver."  87 Fed. Reg. 24,652, 24,727.

To address technological developments and update its decades-old definition of "frame and receiver," ATF promulgated a rule on April 26, 2022, 87 Fed. Reg. 24,652, which took effect on August 24, 2022. The Rule, which has not been challenged by any party in this litigation, contains the following key provisions:

First, to reflect existing law, the Rule adds a sentence to ATF's regulatory definition of "firearm" providing that "[t]he term shall include a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." *See id*. at 24,662, 24,727, 24,735. The term "readily" is also defined by the rule as discussed herein.

Second, the Rule provides an updated definition of the term "frame or receiver." *See id*. at 24,652, 24,727. The Rule further defines "frame" for handguns and "receiver" for rifles, shotguns, and other weapons that expel a projectile. *See id*. at 24,727, 24,735. Unlike the 1968 definition, these updated definitions now describe only a *single* housing or structural component for a *specific* fire control component of a given weapon—including "variants thereof," a term that is also defined.[4] *Id*. For handguns (or variants thereof), the frame is the housing or structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component before initiating the firing sequence. *Id*. For long guns (or variants thereof), the

---

[4] The terms "variant" and "variants thereof" mean a weapon utilizing a similar frame or receiver design irrespective of new or different model designations or configurations, characteristics, features, components, accessories, or attachments. For example, an AK-type firearm with a short stock and a pistol grip is a pistol variant of an AK-type rifle, an AR-type firearm with a short stock and a pistol grip is a pistol variant of an AR-type rifle, and a revolving cylinder shotgun is a shotgun variant of a revolver. *Id*.

receiver is the housing or structure for the primary component designed to block or seal the breech before initiating the firing sequence. *Id*.

The definition of "frame or receiver" includes a frame or receiver that is partially complete, disassembled, or nonfunctional—including a frame or receiver parts kit—that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver. *Id*. at 24,739; *see also id*. at 24,663, 24,727-28.

Third, the Rule also defines "[r]eadily" to mean a process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. *Id*. at 24,735. The Rule also includes factors relevant in determining whether a firearm may readily be completed, assembled, restored, or otherwise converted to function as a firearm or a frame or receiver.[5] This definition is based on case law interpreting the terms "may readily be converted to expel a projectile" in the GCA and "can be readily restored to shoot" in the National Firearms Act (NFA). 86 Fed. Reg. at 27,730.[6]

Fourth, to account for recent technological advances, the Rule clarifies that the GCA's definition of "firearm" includes a "privately made firearm." 87 Fed. Reg. at 24,735. A "privately made firearm" is a firearm (including a frame or receiver) that is assembled or otherwise produced

---

[5] "With respect to the classification of firearms, factors relevant in making this determination include the following: (1) Time, i.e., how long it takes to finish the process; (2) Ease, i.e., how difficult it is to do so; (3) Expertise, i.e., what knowledge and skills are required; (4) Equipment, i.e., what tools are required; (5) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained; (6) Expense, i.e., how much it costs; (7) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and (8) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction." *Id*.

[6] The NFA is part of the Internal Revenue Code of 1986. The Internal Revenue Code, with the exception of the NFA, is administered and enforced by the Secretary of the Treasury. When ATF was transferred to the Department of Justice under the Homeland Security Act of 2002, all its authorities, including the authority to administer and enforce the NFA, were transferred to the Attorney General.

by a person other than a licensed manufacturer, and that does not contain a serial number placed by a licensed manufacturer at the time of production. *Id*. The Rule does not restrict the private making of firearms by non-licensees who are not otherwise prohibited by law from possessing them, and requires only that such firearms that are taken into inventory by licensees be serialized and recorded so that they may be traced by law enforcement if they are later involved in crime.[7] *Id*. at 24,653, 24,742, 24,744.

Importantly, the Rule reflects the long-held understanding that the GCA definition of "firearm" encompasses something more than a completely assembled and functional weapon. Federal courts have uniformly held that disassembled collections of weapon parts and parts kits that may readily be converted to expel a projective are "firearms" under 18 U.S.C. § 921(a)(3)(A). *See, e.g.*, *United States v. Wick*, 697 F. App'x 507, 508 (9th Cir. 2017); *United States v. Stewart*, 451 F.3d 1071, 1073 n.2 (9th Cir. 2006); *United States v. Annis*, 446 F.3d 852, 857 (8th Cir. 2006); *United States v. Ryles*, 988 F.2d 13, 16 (5th Cir. 1993); *United States v. Theodoropoulous*, 866 F.2d 587, 595 n.3d (3d Cir. 1989). As recently as August of this year, a court examining the Rule stated that "a non-operational weapon which can be made operational already qualifies as a firearm under 18 U.S.C. § 921(a)(3)(A)." *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 3:22-CV-116, 2022 WL 3597299, at *11 (D.N.D. Aug. 23, 2022), *appeal docketed* (8th Cir. Aug. 31, 2022). Consequently, "regulating a non-operational kit that can be readily turned into an operational firearm is not a significant change [and] [f]urther, any adjustments to the way these kits, or the parts they contain, are treated has been thoroughly explained." *Id.*

---

[7] The GCA does not, with limited exceptions, supersede State or local law, which may be more restrictive than federal requirements. *See e.g.,* 18 U.S.C. § 927 and 27 C.F.R. § 478.58.

7

Accordingly, the Rule implements the longstanding interpretation of the GCA—by both ATF and federal courts—that kits that include all or most components necessary to produce a functional firearm are weapons that may readily be converted to expel a projectile by the action of an explosive. Consequently, such kits are, and always have been, classified as firearms under the GCA. Further, the Rule clarifies when an item becomes a regulated frame or receiver by stating that partially complete, disassembled, or nonfunctional firearm frames and receivers that are designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, are frames and receivers, and therefore firearms under the GCA. As noted above, while the Complaint cites the Rule extensively, no party in this case has challenged the Rule or questioned ATF's authority to regulate in this area, and the Court need not address the Rule in any decision in this case.

Dated: New York, New York
       October 6, 2022

| | |
|---|---|
| BREON PEACE<br>United States Attorney<br>Eastern District of New York | DAMIAN WILLIAMS<br>United States Attorney<br>Southern District of New York |
| _/s/_____<br>JOSEPH A. MARUTOLLO<br>RICHARD K. HAYES<br>BONNI PERLIN<br>MICHAEL BLUME<br>Assistant U.S. Attorneys<br>United States Attorney's Office<br>Eastern District of New York | _/s/_____<br>JEANNETTE VARGAS<br>LUCAS ISSACHAROFF<br>Assistant U.S. Attorneys<br>United States Attorney's Office<br>Southern District of New York |

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

| | |
|---|---|
| ALEXANDER K. HAAS<br>Director, Federal Programs Branch | GUSTAV W. EYLER<br>Director, Consumer Protection Branch |

| | |
|---|---|
| LESLEY FARBY<br>Assistant Director, Federal Programs Branch | AMANDA LISKAMM<br>Principal Deputy Director, Consumer Protection Branch |
| DANIEL RIESS<br>MARTIN M. TOMLINSON<br>Trial Attorneys<br>Civil Division, Federal Programs Branch | PATRICK RUNKLE<br>DANIEL CRANE-HIRSCH<br>Trial Attorneys<br>Civil Division, Consumer Protection Branch |
| U.S. Department of Justice | U.S. Department of Justice |